UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

18 MISC 0416

In re Application of

QUADRE INVESTMENTS, L.P.,

Petitioner, for an Order Pursuant to 28
U.S.C. § 1782 to Conduct Discovery for
Use in a Foreign Proceeding.

Case No. 18-mc-_____

JUDGE CARTER

# MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300
*Attorneys for Petitioner*

Table of Contents

Page

PRELIMINARY STATEMENT ....................................................................................................1

FACTUAL BACKGROUND ........................................................................................................3

    Nord Anglia and its Shareholders ...........................................................................................3

    Baring Seeks to Take Nord Anglia Private Again ...................................................................3

    The Minority Shareholders Dissent from the Going-Private Merger .....................................5

    The Appraisal Proceeding ........................................................................................................5

ARGUMENT ...............................................................................................................................6

    I.      The Discovery Sought Meets the Statutory Requirements of Section 1782............6

          A.      The Targets Are Found in this District .......................................................6

          B.      The Discovery Sought is Intended for Use in a Foreign Proceeding...........7

          C.      Petitioner is an Interested Person .................................................................9

    II.      The Discretionary Factors Favor Granting the Application ...................................10

          A.      The Discovery is Sought from Non-Parties to the Appraisal Proceeding................................................................................................11

          B.      Cayman Courts are Receptive to Section 1782 Discovery ........................11

          C.      Petitioner is not Circumventing Foreign Restrictions...............................14

          D.      The Requests are Narrowly Tailored .........................................................16

    III.    Expedited Consideration of Petitioner's Application is Warranted.......................17

CONCLUSION.............................................................................................................................18

Table of Authorities

Page

CASES

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
   785 F. Supp. 2d 434 (S.D.N.Y. 2011)............................................................7, 9, 14

*Ahmad Hamad in Appl. of Consorcio Ecuatoriano de Telecomunicaciones S.A. v.*
   *JAS Forwarding (USA), Inc.*,
   747 F.3d 1262 (11th Cir. 2014) .........................................................................7

*Appl. of Malev Hungarian Airlines*,
   964 F.2d 97 (2d Cir. 1992)..........................................................................10, 11

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012)..................................................................................14

*Euromepa S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995).....................................................................11, 12, 17

*First Am. Corp. v. Price Waterhouse LLP*,
   154 F.3d 16 (2d Cir. 1998)..................................................................................16

*Gushlak v. Gushlak*,
   486 Fed. App'x 215 (2d Cir. 2012)................................................................14, 17

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
   633 F.3d 591 (7th Cir. 2011) ............................................................................11

*In re Accent Delight Int'l Ltd.*,
   869 F.3d 121 (2d Cir. 2017)..................................................................................6

*In re Appl. For an Order Permitting Metallgesellschaft AG to take Discovery*,
   121 F.3d 77 (2d Cir. 1997)..................................................................................14

*In re Appl. of Auto-Guadeloupe Investissement S.A., for an Order to Take*
   *Discovery Pursuant to 28 U.S.C. Section 1782*,
   2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) .......................................................12

*In re Appl. of Bloomfield Inv. Resources Corp.*,
   315 F.R.D. 165 (S.D.N.Y. 2016) ........................................................................16

*In re Appl. of Chevron Corp.*,
   709 F. Supp. 2d 283 (S.D.N.Y. 2010).....................................................................9

*In re Appl. of Eurasian Natural Resources Corp., Ltd*,
   2018 WL 1557167 (N.D. Cal. Mar. 20, 2018).......................................................10

Table of Authorities
(continued)

Page

*In re Appl. of Grupo Qumma*,
2005 WL 937486 (S.D.N.Y. Apr. 22, 2005)..........................................................................8, 12

*In re Appl. of OOO Promnefstroy for an Order to Conduct Discovery for Use in a
Foreign Proceeding*,
2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009)............................................................................12

*In re Appl. of Temporary Services Ins. Ltd.*,
2009 WL 2843258 (W.D.N.Y Aug. 28, 2009) ............................................................................9

*In re Appl. of Hill*,
2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007)...........................................................................13

*In re Appl. Pursuant to 28 U.S.C. § 1782*,
249 F.R.D. 96 (S.D.N.Y. 2008) ...............................................................................................11

*In re Ex Parte Appl. of Kleimar N.V.*,
220 F. Supp. 3d 517 (S.D.N.Y. 2016).......................................................................................7

*In re Furstenberg Finance SAS*,
2018 WL 3392882 (S.D.N.Y. July 12, 2018) ............................................................................7

*In re Gushlak*,
2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011)..........................................................................16

*In re Hornbeam Corp.*,
2018 WL 416486 (2d Cir. Jan. 16, 2018) ...............................................................................17

*In re Imanagement Servs. Ltd.*,
2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005)..........................................................................15

*In re Penner*,
2017 WL 5632658 (D. Mass. Nov. 22, 2017) .........................................................................14

*In re Platinum Partners Value Arbitrage Fund L.P.*,
583 B.R. 803 (Bankr. S.D.N.Y. 2018).....................................................................................14

*In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co.
LLP Pursuant to 28 U.S.C. sec. 1782*,
110 F. Supp. 3d 512 (S.D.N.Y. 2015).......................................................................................6

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)........................................................................................................ passim

Table of Authorities
(continued)

Page

*Investment Vehicles v. KPMG, L.L.P.*,
   798 F.3d 113 (2d Cir. 2015)..........................................................................................8

*Marubeni Am. Corp. v. LBA Y.K.*,
   335 Fed. App'x. 95 (2d Cir. 2009).............................................................................10

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015)................................................................................. passim

*Minatec Finance S.A.R.L. v. SI Grp. Inc.*,
   2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) .......................................................16

*Pott v. Icicle Seafoods, Inc.*,
   945 F. Supp. 2d 1197 (W.D. Wash. 2013)...............................................................15

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
   376 F. 3d 79 (2d Cir. 2004).......................................................................................10

*STX Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Pte Ltd.*,
   560 F.3d 127 (2d Cir. 2009).......................................................................................7

Quadre Investments, L.P. ("Petitioner"), hereby respectfully petitions this Court for an order pursuant to 28 U.S.C. § 1782 (a) granting Petitioner leave to serve subpoenas (the "Subpoenas"), on each of (i) The Goldman Sachs Group, Inc., (ii) Macquarie Capital (USA), Inc., (iii) HSBC Securities (USA), Inc., and (iv) HSBC Bank (USA), N.A. ("Respondents"), and (b) directing Respondents to comply with the Subpoenas' requests for the production of documents (the "Requests") within 21 days of this Court's order.

## PRELIMINARY STATEMENT

Petitioner seeks an order from this Court granting its application to take limited discovery from targets in this district who have direct involvement in a going-private merger transaction that resulted in Petitioner's shares in Nord Anglia Education, Inc. (the "Company" or "Nord Anglia"), a company organized under the laws of the Cayman Islands that was publicly traded, effectively being acquired compulsorily at an inadequate offer price. Petitioner seeks this discovery for use in an appraisal proceeding pending in the Cayman Islands, in which the Grand Court of the Cayman Islands will determine the "fair value" of Petitioner's shares (the "Appraisal Proceeding").

Through the merger, the Company's majority and controlling shareholder was able to force the Company to go-private (for a second time) at an inadequate value, and did so without conditioning the transaction on the approval of a majority of the minority shareholders. In the Appraisal Proceeding, Petitioner and other Nord Anglia shareholders (the "Dissenting Shareholders") are exercising their statutory right to dissent from the going-private merger, and are seeking to establish that the merger grossly undervalued the Dissenting Shareholders' shares of the Company (the "Shares"). As of the date of the vote on the merger, the Dissenting Shareholders held approximately 23.7% of the Company's issued and outstanding shares, but, because the Company chose to go private without requiring the minority shareholders' approval,

the going-private merger was a foregone conclusion. The Dissenting Shareholders' only recourse is through the Cayman Appraisal Proceeding.

Due to the limited nature of discovery in the Appraisal Proceeding, the only discovery the Dissenting Shareholders can receive is party discovery from the Company, subject to narrow exceptions explained in the Meeson Declaration. The Cayman courts, however, have been receptive to the introduction of third-party valuation evidence and evidence obtained pursuant to 28 U.S.C. § 1782. Petitioner thus submits this Section 1782 application seeking this Court's leave to obtain discovery from (a) respondent The Goldman Sachs Group, Inc. ("Goldman Sachs"), which served as the financial advisor to the buyers taking the Company private, and (b) respondents Macquarie Capital (USA), Inc., HSBC Securities (USA), Inc., and HSBC Bank (USA), N.A., which provided debt financing in connection with the merger. Each of the Respondents is thus in possession of material independent valuations of the Company.

The Dissenting Shareholders and their expert were provided access to the data room containing the Company's document disclosures in the Appraisal Proceeding in August 2018. These disclosures reflect the Company's documents relevant to the question of fair value, but the data room does not contain documents maintained by Respondents. However, as sophisticated financial companies entering into a multi-billion dollar transaction (and in the case of Goldman, an advisor to the Company on the merger), Respondents will also have relevant documents. These documents include forecasts of the Company's performance, cash flow projections, and any valuations of the Company. This discovery will assist the Dissenting Shareholders' valuation expert perform a complete analysis of the fair value of the Shares. The expert will be submitting a valuation report in January 2019, opining on the fair value of the Shares. Petitioner seeks to obtain the discovery from Respondents sufficiently in advance of a meeting in December 2018 between

the experts in the Appraisal Proceeding and the Company's management, at which the participants will discuss issues relating to the fair value of the Shares. Accordingly, Petitioner requests that the Court grant the Application on an expedited basis.

## FACTUAL BACKGROUND

Nord Anglia and its Shareholders

Nord Anglia has operated premier private schools for over 40 years, in a number of worldwide markets that primarily cater to expatriate communities with high incomes. (*See* Heaver-Wren Decl. ¶ 9 & Ex. 2 at 2). The Company was listed on the London Stock Exchange for over a decade until Baring Private Equity Asia Group, Ltd. ("Baring") took it private in 2008. In 2014, the Company commenced an initial public offering, after which the Company's ordinary shares were publicly traded on the New York Stock Exchange (the "NYSE"). (*Id.* ¶ 10). Baring remained the Company's controlling shareholder and, as of February 2017, it held approximately 66.8% of the Company's ordinary shares. (*See id.* Ex. 1). Petitioner was also a holder of the Company's ordinary shares prior to it going private in September 2017.

Baring Seeks to Take Nord Anglia Private Again

The Company began exploring a potential business combination with Baring as the lead investor in the fall of 2016, less than three years after going public for a second time. (*See id.* Ex. 3 at 11). The Company's board of directors established a special committee in January 2017, which was tasked with evaluating a potential acquisition of the Company by Baring. Around the same time, Canada Pension Plan Investment Board ("CPPIB," and together with Baring, the "Buyer Group") entered into discussions with Baring and the Company to participate as an investor in the acquisition. (*Id.* at 12).

The Buyer Group retained respondent Goldman Sachs as its financial advisor in connection with the acquisition. (Heaver-Wren Decl. ¶ 26). In March 2017, a Baring affiliate entered into a

non-disclosure agreement with respondents Macquarie Capital (USA) Inc. ("Macquarie"), HSBC Securities (USA) Inc. ("HSBC Securities"), and HSBC Bank (USA), N.A. ("HSBC Bank") to evaluate the potential for these parties or their affiliates to provide debt financing in connection with the acquisition of the Company. (*See id.* ¶ 26; *id.* Ex. 3 at 19). Over the course of many months, the Buyer Group, the Company, the Company's advisors, as well as Respondents, engaged in a series of in-depth negotiations regarding the structure and terms of the transaction. The parties also conducted due diligence in order to evaluate the potential transaction. This included certain increases to the proposed share price, as well as negotiations regarding a majority of the minority approval and the go-shop period.

On April 25, 2017, the Company announced that it had entered into a merger agreement whereby it would be taken private by the Buyer Group. (*Id.* Ex. 2). The transaction would be underwritten in part by a group of financial institutions, including Macquarie and two affiliates of HSBC Securities and HSBC Bank. (*Id.* ¶ 26; *id.* Ex. 3 at 51-52). Upon the closing of the merger agreement, the Company's outstanding shares would be canceled in exchange for $32.50 in cash per share (other than those held by Baring's affiliate and incentive payment shares). (*See id.* ¶ 13; *id.* Ex. 3 at 3). The merger's $32.50 share price valued the Company at approximately $4.3 billion. (*See id.* Ex. 2 at 1).

As disclosed in the Company's proxy statement, the Buyer Group "stressed" during the final days of negotiation of the merger that its offer was subject to the Company dropping a condition in the merger agreement that a majority of the minority shareholders vote in favor of the merger. (*See id.* Ex. 3 at 24). However, pursuant to Section 238 of the Companies Law (2016 Revision) of the Cayman Islands ("Section 238"), the Company's shareholders would have the right to dissent from the merger. Dissenting from the merger does not prevent the merger from

4

going ahead, but rather entitles the dissenter to be paid fair value (as determined by the Cayman Court) for the shares.

The merger agreement provided for only a thirty-day "go-shop period" during which the Company was supposed to solicit additional bids. (*See id.* Ex. 3 at 7). Due to Baring holding over two-thirds of the Company's shares, other bidders did not attempt to compete with the Buyer Group's offer.

<u>The Minority Shareholders Dissent from the Going-Private Merger</u>

Petitioner and the other Dissenting Shareholders delivered written objections to the merger pursuant to Section 238 between August 14 and August 18, 2017. (*Id.* Ex. 4 ¶ 28). The Company held an extraordinary general meeting of shareholders on August 21, 2017. (*Id.* ¶ 16). As of the date of the shareholders meeting, the Dissenting Shareholders were the registered owners of a total of 24,660,390 shares, or approximately 23.7% of the Company's issued and outstanding shares. (Heaver-Wren Decl. ¶ 15). The merger was approved at the shareholders meeting, thanks in large part to Baring holding 66.8% of the Company's shares. (*Id.* Ex. 4 ¶ 25).

On September 1, 2017, the merger agreement became effective. (*Id.* ¶ 16). The Company thereafter offered to purchase the Dissenting Shareholders' shares at a value of $27.70 per share. All of the Dissenting Shareholders rejected this offer. (*Id.* Ex. 4 ¶¶ 32-33).

<u>The Appraisal Proceeding</u>

As required by Section 238, the Company filed a Petition with the Grand Court of the Cayman Islands on November 9, 2017 seeking a determination of the fair value of the Shares as of the valuation date of August 21, 2017 (the "Appraisal Proceeding"). (*Id.*).

The Company and the Dissenting Shareholders have each retained an expert to opine on the fair value of the Shares. (Heaver-Wren Decl. ¶ 21). The Dissenting Shareholders were provided access to the Company's disclosures in a data room in August 2018, reflecting "all documents (of

whatever description etc.) which are relevant to the question of fair value created in the five year period ending with August 21, 2017." (*Id.* ¶ 20). These disclosures are limited to documents in the Company's possession, custody, or power, and discovery cannot (subject to limited exceptions) be sought from third parties to the Appraisal Proceeding. (*Id.* ¶ 19; Meeson Decl. ¶ 9). On August 27, 2018, the Cayman court entered an order setting forth the timetable for the Appraisal Proceeding, pursuant to which expert reports are to be exchanged by January 18, 2019, and the Company's management is scheduled to meet with the Dissenting Shareholders' expert and the Company's expert on December 14, 2018. (Heaver-Wren Decl. ¶ 21 & Ex. 6).

## ARGUMENT

### I.      The Discovery Sought Meets the Statutory Requirements of Section 1782

Section 1782 authorizes "[t]he district court of the district in which a person resides or is found [to] order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person . . . ." 28 U.S.C. § 1782(a). To obtain discovery under Section 1782, an applicant must satisfy three statutory requirements: (1) the discovery is directed at someone found within the District; (2) the discovery is for use before a foreign tribunal; and (3) the applicant is an "interested person." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017). Petitioner's application satisfies these requirements.

#### A.      The Targets Are Found in this District

Each of the Respondents is found in this District. (*See generally* Heaver-Wren Decl. ¶ 26). Goldman Sachs, Macquarie, HSBC Securities, and HSBC Bank are foreign companies registered to do business in the state with principal or operational offices in the district. For purposes of Section 1782, "systematic and continuous local activities" render a target "found in" the Southern District of New York. *See In re Republic of Kazakhstan for an Order Directing Discovery from*

*Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*, 110 F. Supp. 3d 512, 515 (S.D.N.Y. 2015) (holding that respondent law firm is found in S.D.N.Y. based on "'systematic and continuous'" presence from New York office of a law firm that admittedly "'operate[s] as a single law firm'"); *In re Ex Parte Appl. of Kleimar N.V.*, 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016) (same). It is also "well-settled under New York law that registration [to do business in New York] subjects foreign companies to personal jurisdiction in New York." *STX Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Pte Ltd.*, 560 F.3d 127, 131 (2d Cir. 2009); *see also In re Furstenberg Finance SAS*, 2018 WL 3392882, at *3 (S.D.N.Y. July 12, 2018) (holding that HSBC Bank (USA) N.A. was found in district, after respondent conceded as much); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 437 (S.D.N.Y. 2011) (finding no dispute that HSBC was found in district); *Ahmad Hamad in Appl. of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (holding that, despite JAS USA being incorporated and headquartered in another state, it was still "found" in the Southern District of Florida because it did business in Miami and had an office there). On account of their systematic and continuous activities in New York, each of the Respondents meet the minimum requirements to be found in this district. Further, Goldman Sachs maintains its global headquarters in New York, and each of the Respondents maintains their principal place of business here. Accordingly, the first statutory requirement is satisfied with respect to each Respondent.

B.     The Discovery Sought is Intended for Use in a Foreign Proceeding

The second statutory requirement is that the discovery sought is intended for use in a foreign proceeding. *See, e.g.*, *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258 (2004). A Section 1782 application establishes the "for use" requirement by showing that the requested discovery can be submitted and "rel[ied] on" by the foreign tribunal. *Certain Funds,*

*Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 118 (2d Cir. 2015) (quoting *Intel*, 542 U.S. at 257-58). To meet the "for use" test, the materials sought need not be either discoverable, *Intel*, 542 U.S. at 243, or even be shown to be admissible as evidence in the foreign jurisdiction. *In re Appl. of Grupo Qumma*, 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005). Nor must the discovery be necessary for the party seeking it to prevail in the foreign proceeding. Rather, it merely needs to consist of materials that can "be employed with some advantage or serve some use in the proceeding." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).

As set forth in detail in the Heaver-Wren Declaration, the discovery Petitioner seeks is for use in the Appraisal Proceeding. Indeed, the discovery sought relates to the fair value of the Shares, and will be utilized in the Appraisal Proceeding by the Dissenting Shareholders' expert and the Cayman Court in determining the fair value of the Shares pursuant to Section 238. (*See* Heaver-Wren Decl. ¶¶ 17-20). In determining the fair value of the Shares, Cayman courts have emphasized the need to consider all facts and matters which may have a bearing on the determination of fair value. For example, the Court of Appeal in *Qunar Cayman Islands Limited v. Athos Asia Event Driven Master Fund et al* (Unreported CICA 10 April 2018) held that "it should be a general obligation of the Company to search for and produce all documents relevant to fair value." (*See* Meeson Decl. Ex. 1 ¶ 45). The Court of Appeal in *Qunar* continued, explaining that

> [V]alue, and the market, is for the world, not only the companies concerned, and that often such companies may not understand the world in which they operate as well as outsiders understand it. But whether that is true or not, value depends on a multiplicity of factors, and methodologies, about which sophisticated analysts have different insights, and no one is more relevantly concerned with getting the research and analysis and those insights right than those who are thinking of investing in or have invested in a company. However, "getting it right" is not the point at this stage of the proceedings. What is needed is for the Court, at the end of the day, to get it right, having been exposed to all the material and all the arguments.

> [I]f dissenters have in their possession, as they are likely to so, documents, reports, analyses, projections and so on about companies in which they invest, their products, their industries, their markets, their competitors, in other words, documentary material which relates to the value of such companies, then this material is as much a matter for disclosure as any such documents in the hands of the companies; and it matters not whether such material is possessed by the one side or the other, or is simply available as a matter of efficient research. …"

(*Id.* ¶¶ 74-75; *see generally* Meeson Decl. ¶¶ 31-33).

This need was also succinctly expressed by the Cayman Islands Court of Appeal in *Qihoo 360 Technology Co., Ltd* (unreported, October 9, 2017 CICA) Martin JA, as follows: "The sole task of the Court is to determine the fair value of the dissenters' shares. To do that, it needs full information." (Meeson Decl. Ex. 2).

Accordingly, the Dissenting Shareholders' expert (as well as the Company's) can and indeed should consider all of the available evidence in establishing opinions regarding the fair value of the Shares.

Petitioner has thus satisfied the second statutory requirement. *See In re Appl. of Temporary Services Ins. Ltd.*, 2009 WL 2843258 , at *2 (W.D.N.Y Aug. 28, 2009) (finding discovery sought for use in Cayman proceeding satisfied this prong).

### C.      Petitioner is an Interested Person

Petitioner is an "interested person" under Section 1782 because it is a dissenting shareholder that is a party to the Appraisal Proceeding. (*See* Heaver-Wren Decl. Ex. 4). *See Ahmad Hamad Algosaibi*, 785 F. Supp. 2d at 438 ("No doubt litigants are included among . . . the interested persons who may invoke § 1782.") (quoting *Intel*, 542 U.S. at 256); *In re Appl. of Chevron Corp.*, 709 F. Supp. 2d 283, 291 (S.D.N.Y. 2010) (noting petitioner "is an 'interested person' because it is a party to" the foreign litigation). Accordingly, the third statutory requirement is satisfied.

## II.       The Discretionary Factors Favor Granting the Application

Once the three statutory factors are satisfied, the Court should determine, in its discretion, whether to order the requested discovery. *See Intel*, 542 U.S. at 264. In *Intel*, the Supreme Court identified four factors that the Court could consider in determining when discovery is permissible under Section 1782. The four factors are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" such that the "foreign tribunal has jurisdiction over [it];" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court juridical assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the requests are "unduly intrusive or burdensome" and if so, whether those requests can be "trimmed." *Id.* at 264-65; *see also Mees*, 793 F.3d at 298. None of these factors should be given more weight than the others, and no one factor is dispositive. *Marubeni Am. Corp. v. LBA Y.K.*, 335 Fed. App'x 95, 97 (2d Cir. 2009).

In considering these factors, the Court is required to keep in mind "the twin aims of Section 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts." *In re Appl. of Eurasian Natural Resources Corp., Ltd*, 2018 WL 1557167, at *2 (N.D. Cal. Mar. 20, 2018) (*citing Schmitz v. Bernstein Liebhard & Lifshitz, LLP,* 376 F. 3d 79, 84 (2d Cir. 2004)). As the Supreme Court noted, "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247. The Second Circuit has further stated that "Congress intended [] that 28 U.S.C. § 1782 would provide an avenue for judicial assistance to foreign or international tribunals whether or not reciprocal arrangements existed. . . . [Section 1782] is a one-way street." *Appl. of Malev Hungarian*

*Airlines*, 964 F.2d 97, 101 (2d Cir. 1992) (quotation omitted). "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). *See also Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) ("a party to litigation in a foreign country can seek discovery relating to that litigation in a federal district court, and, in the discretion of that court, can obtain *as much discovery as it could* if the lawsuit had been brought in that court rather than abroad." (internal citations omitted) (emphasis added).

Petitioner readily satisfies the discretionary *Intel* factors.

### A.    The Discovery is Sought from Non-Parties to the Appraisal Proceeding

The first *Intel* factor looks at whether the Respondents are participants in the Appraisal Proceeding. In this regard, courts should treat Section 1782 requests "permissively, especially where . . . the discovery is sought from a non-party to the foreign actions." *In re Appl. Pursuant to 28 U.S.C. § 1782*, 249 F.R.D. 96, 103 (S.D.N.Y. 2008). Indeed, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264.

Here, none of the Respondents is a party to the Appraisal Proceeding and Cayman procedural law does not provide Petitioner any applicable or efficient means by which it can obtain the discovery sought in its Application. (Heaver-Wren Decl. ¶ 26; Meeson Decl ¶ 19). This factor weighs in favor of granting the Application.

### B.    Cayman Courts are Receptive to Section 1782 Discovery

The second *Intel* factor requires courts to consider whether the "nature, attitude and procedures" of the foreign tribunal indicate that it is receptive to Section 1782 assistance. As to this factor, courts have repeatedly emphasized that the inquiry into "the discoverability of

requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782." *Euromepa*, 51 F.3d at 1100.[1] Absent such proof, courts are inclined to grant the application for discovery. *See In re Appl. of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009); *In re Appl. of Grupo Qumma*, 2005 WL 937486, at *3 ("The Mexican court, rather than this Court, should decide whether the additional evidence is admissible, and it will be in a better position to do so if Qumma is permitted to conduct the requested discovery first."). As such, the burden is on the party opposing the discovery to show that a foreign court is not receptive to federal court assistance. *Auto-Guadeloupe Investissement*, 2012 WL 4841945, at *6.

As set forth in the Meeson Declaration, Cayman courts will generally consider any evidence that has a bearing on determining the fair value of a company's shares, and Petitioner is unaware of any authority suggesting that such evidence will be inadmissible as a matter of law. Indeed, the Cayman Islands Court of Appeal has recently underscored that third-party valuation materials may be considered in a Section 238 proceeding, reasoning:

> [I]n my judgment, if third party valuations in the possession of the Company are relevant, so are third party valuations not in the possession of the Company, but, for instance in the possession of the Dissenting Shareholders. After all, the question of fair value is closely related to the question of what a willing buyer and a willing seller would exchange for the shares of the Company (or for the Company as a whole): and that question is closely related to valuations conducted within the market generally.

---

[1] The Second Circuit in Euromepa specifically found in that case that because there was no evidence that French authorities would reject the discovery assistance, "we are unable to accept the district court's conclusion that granting MEPA's discovery request will in fact offend the people of France." 51 F.3d at 1101. *See also In re Appl. of Auto-Guadeloupe Investissement S.A., for an Order to Take Discovery Pursuant to 28 U.S.C. Section 1782*, 2012 WL 4841945, at *6 (S.D.N.Y. Oct. 10, 2012); *In re Appl. of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009).

(*See* Meeson Decl. Ex. 1 (quoting *Re Qunar Cayman Islands Limited* (unreported, 10 April 2018, CICA NO 24 of 2017) at paragraph 60)).[2] The same reasoning extends to the materials Petitioner seeks in this application, as Respondents unquestionably possess knowledge and documentary evidence relevant to the "question of fair value" the parties in the Appraisal Proceeding are currently litigating. Accordingly, Petitioner has a good faith basis for believing that it will be able to use the documents in the Appraisal Proceeding. *See In re Appl. of Hill*, 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007).

Furthermore, as set forth in the Meeson Declaration, Cayman courts are receptive to a party to a Cayman proceeding utilizing Section 1782 applications to obtain discovery for use in that proceeding. (*See* Meeson Decl. ¶ 42 & Ex. 5). Indeed, the Cayman appellate court in *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited*, [2009] CILR 553, expressly held that the right to obtain full discovery, pre-trial deposition testimony as well as documents, "is a right conferred by U.S. law-it is *not a right* conferred by, or *to be withheld under Cayman law*." (emphasis added). (*Id.* Ex. 5 (upholding trial court determination to allow the use of discovery obtained through 28 U.S.C. § 1782)). The *Lyxor* Court ruled that, where a party has a right to avail itself of legitimate foreign process, such as that provided by Section 1782, there must be a compelling reason to prevent it from doing so. The Cayman Court ruled that such a prohibition would only be appropriate where it would be unconscionable to allow the use of discovery obtained through foreign process.

---

[2] Moreover, the Company's disclosures in the Appraisal Proceeding will not include documents in the possession, custody, or control of Respondents. Cayman Courts consider a party's discovery obligations to extend only to documents which are within the "possession," "custody," or "power" of the Company, and cannot require the Company to discover documents which it neither holds physically nor has an absolute or unfettered right to request and receive from a third party. (Meeson Decl. ¶¶ 10-11).

Multiple courts have also recognized that "Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law." *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018); *see Gushlak v. Gushlak*, 486 Fed. App'x 215, 218 (2d Cir. 2012) (affirming use of Section 1782 applications in connection with Cayman divorce proceedings); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (granting applications seeking documents for use in Cayman proceedings); *In re Penner*, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (finding that the Cayman court "is open to receiving § 1782 discovery"). In particular, as established above, Cayman courts in appraisal proceedings are not only receptive to, but welcome receiving information concerning third party valuations, such that the discovery Petitioner seeks will be relevant in the Appraisal Proceeding. *Qunar*, at paragraph 60. Accordingly, this factor also weighs in favor of granting the Application.

### C.   Petitioner is not Circumventing Foreign Restrictions

The third *Intel* factor requires the Court to weigh whether the application is meant to "circumvent foreign proof-gathering restrictions," and is meant to preclude bad faith misuse of the Section 1782 process. *Intel*, 542 U.S. at 264-65. In *Mees*, the Second Circuit noted that this factor does "not 'authorize denial of discovery pursuant to § 1782 solely because such discovery is unavailable in the foreign court, but simply . . . allow[s] consideration of foreign discoverability (along with many other factors) when it might otherwise be relevant to the § 1782 application.'" 793 F.3d at 303 (quoting *In re Appl. for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997)). The information sought need not be discoverable or admissible in the foreign forum. *Intel*, 542 U.S. at 253 ("We now hold that § l782(a) does not impose [] a [foreign-discoverability] requirement."); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012). Further, even if there were an alternative means to obtain the

requested materials in the Cayman Proceeding, "[Section] 1782 does not contain an exhaustion requirement that would impose upon an applicant a duty to first seek the requested discovery from the foreign court." *In re Imanagement Servs. Ltd.*, 2005 WL 1959702, at \*5 (E.D.N.Y. Aug. 16, 2005). The *Mees* Court also "emphasize[d] that the availability of the discovery in the foreign proceeding should not be afforded undue weight." 793 F.3d at 303.

As set forth in the Meeson Declaration, there are no feasible or practical means in the Appraisal Proceeding by which Petitioner could obtain the discovery that it seeks. (Meeson Decl. ¶¶ 18-26). This is not because Cayman courts wish to exclude such evidence, but because the Cayman courts generally only have the power to order discovery from the parties to the action.[3] As noted above, the Cayman Courts welcome relevant valuation information from third parties.

The analysis applied in another Section 1782 case involving valuations, *Pott v. Icicle Seafoods, Inc.*, 945 F. Supp. 2d 1197, 1198-99 (W.D. Wash. 2013), is instructive. In *Pott*, the petitioner was involved in a foreign proceeding regarding the fair value of a company, Bentinicos de Argentina ("BDA"), and sought valuation evidence from a U.S.-based company that had considered buying BDA. The District Court granted the 1782 application and, in denying a motion to quash, concluded that the petitioner was not seeking to circumvent foreign discovery rules or policies because the third-party valuation evidence the application sought "may contradict the evidence produced by BDA" in the foreign proceeding. *Id.* at 1200.

Moreover, Petitioner is making its Section 1782 Application only after having been provided with access to the Company's disclosures as provided in the data room in the Appraisal

---

[3] Further, the Cayman appellate court itself expressly held that to the extent that the Cayman litigant "has taken the view that its interests are best served by seeking to obtain the information which it needs by" use of Section 1782, "rather than by proceeding by way of" any procedural devices available in the Cayman action, "it cannot be said that, in making that choice, it is acting oppressively or unconscionably or that its choice amounts to an abuse of the process of the Cayman Courts." (Meeson Decl. Ex. 5 (*Lyxor*, 2009 CILR 553, ¶¶ 57-58)).

Proceeding, and after the Cayman Court has ruled on the scope of discovery in the Appraisal Proceeding. The discovery Petitioner is seeking is relevant to the Appraisal Proceeding and granting the Application would not conflict with or circumvent any proof-gathering restrictions in the Cayman Islands.

D.    The Requests are Narrowly Tailored

Finally, "a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26." *Mees*, 793 F.3d at 302; *see also In re Appl. of Bloomfield Inv. Resources Corp.*, 315 F.R.D. 165, 168 (S.D.N.Y. 2016) (the party responding to the Section 1782 discovery is the one that must establish that such discovery presents an undue burden).

Respondents will not be able to establish that the Requests are unduly intrusive or burdensome pursuant to the Federal Rules of Civil Procedure, as the requests in the Subpoenas are each narrowly tailored in time and scope to seek only information relevant to the Appraisal Proceeding. The Requests focus on analyses of the Company in the possession of Respondents, including forecasts of the Company's performance, cash flow projections, and any valuations of the Company. Further, the Requests use a narrow time period that is limited to the period during which the Company was considering the transaction. (*See* Heaver-Wren Decl. ¶ 28). *See In re Gushlak*, 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) (holding that a Section 1782 request, like any other discovery request, is "reasonably calculated" to lead to relevant information if there is "any possibility that the information sought may be relevant to the subject matter of the action"); *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 23 (2d Cir. 1998) (finding reasonableness of subpoena that only sought documents which concern "the precise subject matter of the underlying [proceedings]"); *Minatec Finance S.A.R.L. v. SI Grp. Inc.*, 2008 WL 3884374, at *8

(N.D.N.Y. Aug. 18, 2008) (granting application with respect to "specifically and narrowly tailored" requests).

To the extent that the Court has concerns that any request may be overly broad, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa*, 51 F.3d at 1101. Accordingly, this factor weighs in favor of granting the Application, and Petitioner is entitled to the limited discovery sought from Respondents.

### III.    Expedited Consideration of Petitioner's Application is Warranted

Although this Court may grant Petitioner's Application on an *ex parte* basis,[4] Petitioner brings this application by order to show cause so that Respondents must raise objections, if any, to the perceived burdensomeness of Petitioner's subpoenas within seven days of the date of the OSC, instead of the time by which the Respondents may otherwise respond to the subpoenas once served. *See* Fed. R. Civ. P. 45(d). Such expedited relief is necessary in light of the rapidly approaching deadlines affecting the Dissenting Shareholders' expert discovery (*i.e.*, the December 2018 meeting in the Appraisal Proceeding between the Company's management and the experts), which necessitates sufficient time for (i) this Court's prompt resolution of any disputes; (ii) Respondents' collection, review, and production of documents; (iii) scheduling and taking depositions of Respondents' representatives; and (iv) review and analysis of such discovery in advance of the December meeting. (Heaver-Wren Decl. ¶ 29). Petitioner further requests that this

---

[4] *See, e.g., Gushlak v. Gushlak*, 486 Fed. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte."); *In re Hornbeam Corp.*, 2018 WL 416486, at *2 (2d Cir. Jan. 16, 2018) (same and noting the widespread recognition that § 1782 applications are properly handled ex parte).

Court order that Respondents' time to comply with the Subpoenas' Requests for the production of documents shall be within 21 days of this Court's order.

## **<u>CONCLUSION</u>**

Accordingly, for the above stated reasons, Petitioner respectfully requests that this Court grant its application for judicial assistance pursuant to 28 U.S.C. § 1782, and issue an order (i) granting Petitioner leave to serve the Subpoenas on each of the Respondents, and (ii) directing Respondents to comply with the Subpoenas' Requests for the production of documents within 21 days of this Court's order.

Dated: New York, New York
        September 7, 2018

                                OLSHAN FROME WOLOSKY LLP


                                By:   */s/ Lori Marks-Esterman*
                                      Lori Marks-Esterman
                                      Kyle J. Kolb
                                      1325 Avenue of the Americas
                                      New York, New York 10019
                                      (212) 451-2300
                                      *Attorneys for Petitioner*

18